UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

IRA SABRAN and BARBARA SABRAN,
a/a/o 2203 Regal Way LLC,

      Plaintiffs,

v.                                                  Case No: 2:20-cv-803-JLB-MRM

ROCKHILL INSURANCE COMPANY,

      Defendant.
_____/

## ORDER

Plaintiffs Ira and Barbara Sabran (together, "the Sabrans") are the purported assignees of a claim for coverage under a homeowner's insurance policy issued by Defendant Rockhill Insurance Company ("Rockhill") to 2203 Regal Way LLC ("Regal"). Rockhill denied Regal's claim for coverage under the policy for storm damage to the insured property allegedly caused by Hurricane Irma in 2017. Regal assigned its claim for insurance benefits to the Sabrans, who then sued Rockhill in Florida state court for breach of contract. Rockhill subsequently removed the suit to federal court. Rockhill asks this Court to dismiss the complaint, contending that the Sabrans lack standing because Regal's assignment of insurance benefits to the Sabrans was invalid under Florida Statute § 627.405 and the policy's anti-transfer clause. As discussed below, Rockhill's motion to dismiss (Doc. 6) is **DENIED**.

### BACKGROUND

The insurance policy was in effect when Hurricane Irma allegedly caused storm damage to the insured property in September 2017. (Doc. 1-1 at 3, ¶¶ 9–11;

Doc. 3-1 at 2.)  Regal submitted an insurance claim to Rockhill, which Rockhill denied on March 29, 2019.  (Doc. 1-1 at 3, ¶¶ 12–13.)  On April 30, 2020, in connection with the sale of the insured property and without Rockhill's written consent, Regal executed an assignment of benefits ("AOB") to the Sabrans, assigning:

> all right, title and interest in and to the Claim, and all claims, demands, cause(s) of action of whatsoever kind and nature, as well as the rights to any and all benefits, proceeds or damages arising therefrom, that [Regal] has had, now has, or may have against [Rockhill] as it relates to the Claim . . . ."

(Id. ¶ 14; Doc. 3-1 at 2.)  After this assignment, the Sabrans submitted a claim for the loss to the Regal property to Rockhill.  (Doc. 1-1 at 4, ¶ 16.)  On July 29, 2020, Rockhill again denied the claim to the Regal property.  (Id. at 4, ¶¶ 16, 20.)

On September 9, 2020, the Sabrans filed a complaint alleging breach of contract against Rockhill in Florida state court, to which they attached the AOB and the policy.  (Doc. 1-1.)  Rockhill subsequently removed the action to this Court on October 12, 2020. (Doc. 1.)  Two days later, Rockhill moved to dismiss the complaint under Federal Rules of Civil Procedure 12(b)(1), (b)(2), and (b)(6), arguing: (a) the Sabrans lack standing because they have not suffered an injury in fact; (b) the policy's anti-transfer clause bars the AOB; (c) Florida Statute § 627.405 (2017) bars the Sabrans from maintaining this action; and (d) the Sabrans cannot cure their lack of standing now that the lawsuit has been filed.  (Doc. 6.)  The Sabrans timely responded.  (Doc. 13.)

## **LEGAL STANDARD**

Rockhill moves to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6).  When a motion turns on multiple grounds, a court should consider the jurisdictional challenges first.  See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 88–89 (1998).  To have Article III standing, a plaintiff must show he "(1) suffered an injury-in-fact (2) that is fairly traceable to the defendant's conduct and (3) is redressable by a favorable judicial decision." MSPA Claims 1, LLC v. Tenet Fla., Inc., 918 F.3d 1312, 1317 (11th Cir. 2019). Moreover, in a diversity action involving a contract, state law determines whether a plaintiff has a legally protected interest for Article III purposes.  See Ave. CLO Fund Ltd. v. Bank of Am., NA, 709 F.3d 1072, 1077 (11th Cir. 2013)

Rule 12(b)(1) motions can raise factual or facial challenges.  See McElmurray v. Consol. Gov't of Augusta-Richmond Cnty., 501 F.3d 1244, 1251 (11th Cir. 2007) (internal citations omitted).  A facial attack challenges a court's jurisdiction without disputing the facts alleged in the complaint and requires the court to treat the complaint's allegations as true.  Id. (citation omitted).  In contrast, a factual attack challenges "the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits are considered."  Id. (citation omitted).  In assessing a factual challenge, no presumption of truthfulness attaches to a plaintiff's allegations.  See Lawrence v. Dunbar, 919 F.2d 1525, 1529 (11th Cir. 1990) (quoting Williamson v. Tucker, 645 F.2d 404, 413 (5th Cir. 1981)).  Rockhill raises both factual and facial challenges.

Further, to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Reasonable inferences from the factual allegations are to be construed in the light most favorable to the plaintiff. Id.; see also Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1273 n.1 (11th Cir. 1999). A party must plead more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. A court's consideration of a Rule 12(b)(6) motion is limited "to the pleadings and exhibits attached thereto." Grossman v. NationsBank, N.A., 225 F.3d 1228, 1231 (11th Cir. 2000) (citation omitted).

## DISCUSSION

Each of Rockhill's arguments turns on whether the Sabrans had a valid assignment. Rockhill first notes that the policy contains specific provisions requiring Rockhill's written consent before any valid assignment of rights and duties under the policy. (Doc. 6 at 4.) Rockhill next argues that Florida's common law prohibition against such provisions is inapplicable because Rockhill is a surplus lines insurer. (Id. at 8–11.) Absent Rockhill's written consent to the assignment, Rockhill reasons, the Sabrans lack a valid assignment, an injury-in-fact, an insurable interest under Florida Statute § 627.405, and standing to maintain this lawsuit. (Id. at 7, 12–13.)

Turning to the text of the insurance policy, the insurance policy provides:

> T. **Assignment**
>
> Assignment of this policy will not be valid unless we give our written consent.
>
> . . . .
>
> 21. **TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY**
>
> Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual Named Insured.

(Doc. 1-1 at 28, 62.) As will be explained, however, courts applying Florida law routinely find such language unenforceable because an insured's post-loss assignment of benefits does not require the insurer's consent.

Further, a valid assignment can impute to the assignee the requisite injury-in-fact and insurable interest if the assignor met those requirements at the time of loss, not at the assignment of benefits. See MSPA Claims 1, 918 F.3d at 1318–19 (finding assignee adequately alleged concrete injury-in-fact required for Article III standing because assignment was valid) (citing MSP Recovery, LLC v. Allstate Ins. Co., 835 F.3d 1351, 1357–58 (11th Cir. 2016)); Accident Cleaners, Inc. v. Universal Ins. Co., 186 So. 3d 1, 3 (Fla. 5th DCA 2015) (finding assignee satisfied the insurable interest requirement of Fla. Stat. § 627.405 when assignor who met the insurable interest requirement at the time of loss properly assigned right to sue insurer thereafter). Accordingly, because Rockhill does not contend that Regal lacked the requisite injury-in-fact and insurable interest, Rockhill's motion turns on whether the AOB is valid.

**I.    Post-loss benefits are assignable**.

    **A.    The common-law right of assignments in Florida**.

"All contractual rights are assignable unless the contract prohibits assignment, the contract involves obligations of a personal nature, or public policy dictates against assignment." Kohl v. Blue Cross & Blue Shield of Fla., Inc., 988 So. 2d 654, 658 (Fla. 4th DCA 2008) (citation omitted). By statute, an insurance policy "may be assignable, or not assignable, as provided by its terms." Fla. Stat. § 627.422.

But, under Florida's common law, the terms of the insurance policy and insurance-related statutes do not end a court's analysis when evaluating the propriety of a post-loss assignment. This is because an insured may assign a post-loss claim, "[e]ven when an insurance policy contains a provision barring assignment of the policy . . . ." One Call Prop. Servs. Inc. v. Sec. First Ins. Co., 165 So. 3d 749, 753 (Fla. 4th DCA 2015) (collecting cases); cf. Accident Cleaners, Inc., 186 So. 3d at 2–3 (same). Thus, "[i]t is well settled under Florida law that provisions in insurance contracts requiring consent to assignment do not apply to assignment after the loss, and that an assignee has a common-law right to sue on a breach of contract claim. See CMR Constr. and Roofing, LLC v. Empire Indem. Ins. Co., No. 2:18-cv-779-FtM-99UAM, 2019 WL 2281678, at *3 (M.D. Fla. May 29, 2019) (emphasis added) (applying Florida law).

Turning to Florida's common law right for an insured to assign its benefits under a policy after experiencing a loss, Florida courts have emphasized that the

6

post-loss assignment does not require the insurer's consent as follows: "Even if an insurance policy contained a specific, articulate provision precluding an insured's post-loss assignments of benefits without the insurer's consent, Florida case law yields deep-rooted support for the conclusion that post-loss assignments do <u>not</u> require an insurer's consent." <u>Bioscience W., Inc. v. Gulfstream Prop. & Cas. Ins. Co.</u>, 185 So. 3d 638, 642–43 (Fla. 2d DCA 2016) (emphasis in original); <u>see also</u> <u>Sec. First Ins. Co. v. State, Office of Ins. Reg.</u>, 177 So. 3d 627, 628 (Fla. 1st DCA 2015) ("On this point we find an unbroken string of Florida cases over the past century holding that policyholders have the right to assign such claims without insurer consent.").

### B. Surplus lines insurers may not condition assignment on consent.

Rockhill, however, argues that these principles apply only to authorized insurers and not to surplus lines insurers.[1] Put differently, Rockhill contends that the prohibition of conditioning an assignment on the insured's consent is found only in Fla. Stat. § 627.422(2),[2] and that if the prohibition does not apply to surplus lines

---

[1] In general, insurance in Florida is provided by either (1) an "admitted" or "authorized" insurer; or (2) a "non-admitted" or "unauthorized" insurer. <u>See</u> <u>Raven Env'l Restoration Servs., LLC v. United Nat'l Ins. Co.</u>, 489 F. Supp. 3d 1372, 1375 (S.D. Fla. 2020) (citations omitted). Admitted insurers are licensed to do business in the state. <u>Id.</u> (citation omitted). Non-admitted insurers, often called "surplus lines" carriers, are not licensed to do business in the state. <u>Id.</u> (citation omitted).

[2] "A residential or commercial property insurance policy may not prohibit the assignment of post-loss benefits unless it complies with s. 627.7153." Fla. Stat. § 627.422(2). Rockhill does not contend that it complied with section 627.7153 as to the policy at issue but observes that the provisions of chapter 627 do not apply to surplus lines insurance. (Doc. 6 at 10.) As an initial matter, the Court is unpersuaded that the Florida legislature intended to upend over a century of

7

insurers, Rockhill "was free to include provisions and conditions that authorized insurers otherwise cannot." (Doc. 6 at 11.) The Court disagrees.

In making this argument, Rockhill relies on <u>Raven Environmental Restoration Services, LLC v. United National Insurance Co.</u>, 489 F. Supp. 3d 1372 (S.D. Fla. 2020). (<u>See</u> Doc. 6 at 9–10). There, the court held that an insured's assignment to a provider of emergency restoration services was invalid because the assignor was "explicitly contractually prohibited from assigning its post-loss rights." <u>Id.</u> at 1378. In so holding, the <u>Raven</u> court found that a "surplus line insurance contract's prohibition of post-loss assignments is valid under Florida law" because "surplus lines insurance contracts are not subject to the post-loss assignment prohibition set forth in chapter 627." <u>Id.</u> at 1377–78 (citation omitted). But that conclusion flies in the face of decades of Florida common law permitting post-loss assignment of benefits.

---

common law recognizing that an insurer may not prohibit the assignment of post-loss benefits without an insurance carrier's consent. Instead, the legislature carved out a narrow exception from the common law assignment right in certain circumstances that do not apply here. Briefly, under the statute, an insurer may restrict an insured's right to assign post-loss benefits <u>to or from persons providing restoration and repair services</u> for the insured property if the insurer satisfies certain statutory requirements. <u>See</u> Fla. Stat. §§ 627.7153(1)–(2), 627.7152(1)(b). The Sabrans, of course, purchased the property from Regal and are not providing any restoration and repair services. <u>See id.</u> § 627.7153(1)–(2) (restricting assignment of "post-loss benefits under a residential property insurance policy or commercial property insurance policy, as that term is defined in s. 627.0625(1), are assigned or transferred, or acquired in any manner, in whole or in part, to or from a person providing services to protect, repair, restore, or replace property or to mitigate against further damage to the property").

In all events, the Raven court first distinguished an "authorized" insurer from a "surplus lines" insurer, stating that the latter "need not adhere to the same, numerous statutory requirements as authorized insurers." Id. at 1376 (citing Fla. Stat. § 626.913(4)). The court then reasoned that "in Florida, an authorized insurer of a residential or commercial property insurance policy cannot prohibit post-loss assignments unless it follows certain statutory requirements." Id. at 1377 (citing Fla. Stat. § 627.422(2)). But "[w]hile authorized insurers may not prohibit the assignment of post-loss rights or benefits," the court opined that "no such prohibition applies to surplus lines insurers." Id. In reaching this conclusion, the court in Raven reasoned that "[i]n the absence of statutory provisions to the contrary, insurers have the right to limit their liability and to impose such conditions as they wish upon their obligations." Id. (quoting France v. Liberty Mut. Ins. Co., 380 So. 2d 1155, 1156 (Fla. 3d DCA 1980)).

The Court respectfully disagrees with the Raven court's broad-stroke statement in the milieu of post-loss assignments, as it is well established under Florida common law that, as a general matter, an insurer cannot restrict an insured's post-loss assignment of benefits. See, e.g., Accident Cleaners, Inc., 186 So. 3d at 3 ("Dating back to 1917, the Florida Supreme Court recognized that provisions in insurance contracts requiring consent to assignment of the policy do not apply to assignment after loss.") Thus, even if the Raven court were correct in finding that surplus lines insurers need not comply with section 627.7153, Florida recognizes a common law right to assign post-loss benefits without the insurer's consent, despite

9

section 627.422's language.³ See Panopoulos v. Lexington Ins. Co., No. 8:13-CV-700-T-33TGW, 2013 WL 2708688, at *2 (M.D. Fla. June 12, 2013); Bioscience W., Inc., 185 So. 3d at 643 ("Nearly 100 years ago, the Florida Supreme Court recognized that provisions in an insurance policy requiring consent to assignment of that policy do not apply to assignments after a loss." (citing W. Fla. Grocery Co. v. Teutonia Fire Ins. Co., 77 So. 209, 210–11 (1917))). And there is no indication that this common law prohibition does not extend to surplus lines insurers. For these reasons, the Court finds that Regal was free to assign its post-loss benefits to the Sabrans without Rockhill's consent.

## II. The policy's language only prohibits assignment of the entire policy.

Having established that Regal was free to assign its post-loss benefits to the Sabrans without Rockhill's consent, the Court turns to Rockhill's assertion that the text of the policy prohibits the assignment of benefits under the policy to the Sabrans. Specifically, Rockhill argues that the policy's plain language prohibits Regal "from transferring its rights to benefits under the policy" to the Sabrans "without Rockhill's consent." (Doc. 6 at 4, ¶ 12.) Rockhill thus argues that if the

---

³ Notably, Fla. Stat. § 627.7153 applies to policies issued or renewed on or after July 1, 2019. Fla. Stat. § 627.7153(5). And the relevant language in section 627.422(2) was added effective July 1, 2019. Compare Fla. Stat. § 627.422 (2019), with Fla. Stat. § 627.422 (2017). The covered loss in Raven occurred on January 6, 2020. So the policy in Raven appears to have been issued or renewed after July 1, 2019. Id. at 1374. But the statutory restriction of the circumstances in which an insurer may restrict post-loss assignment of benefits was not in force at the time of Regal's September 2017 loss. See Fla. Stat. § 627.422 (2017). Before the implementation of Fla. Stat. § 627.422(2) (2019) and Fla. Stat. § 627.7153 (2019), there was no statutory restriction on post-loss assignments of benefits.

10

parties to the insurance policy—Regal and Rockhill—agreed that no post-loss assignments were permissible without Rockhill's consent, then it prevails on its motion to dismiss here because the parties got what they bargained for. In all events, the text of the policy's anti-transfer provision belies Rockhill's argument and states as follows:

> T. **Assignment**
>
> <u>Assignment of this policy</u> will not be valid unless [Rockhill] give[s] [its] written consent.
>
> . . . .
> 21. **TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY**
>
> [Regal's] rights and duties under this policy may not be transferred without [Rockhill's] written consent except in the case of death of an individual Named Insured.

(Doc. 1-1 at 28, 62 (emphasis added).)

As will be explained, the text of the unambiguous, plain, and ordinary meaning of the anti-transfer provision precludes the transfer of the entire insurance policy, not a post-loss benefit under the policy and the transfer of Regal's "rights and duties under this policy," without Rockhill's written consent.

In Florida, a contract is interpreted "in accordance with its plain meaning." <u>Dear v. Q Club Hotel, LLC</u>, 933 F.3d 1286, 1293 (11th Cir. 2019) (quotation omitted). "If the language used in an insurance policy is plain and unambiguous, a court must interpret the policy in accordance with the plain meaning of the language used so as to give effect to the policy as it was written." <u>Bioscience W., Inc.</u>, 185 So. 3d at 640 (citation omitted); cf. <u>Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.</u>, 913 So. 2d 528,

11

532 (Fla. 2005). And an insurance policy should be construed in a manner which gives all the provisions effect. See Bioscience W., Inc., 185 So. 3d at 640; cf. Siegle v. Progressive Consumers Ins. Co., 819 So. 2d 732, 739 (Fla. 2002).

First, it is abundantly clear that Regal merely assigned to the Sabrans its post-loss rights, benefits, and proceeds due under the policy. It did not assign the entire policy, which would have been precluded under the text of the policy. Assignment of "this policy" covers the entire policy, not a portion of it. Moreover, Regal did not assign its rights and duties under the policy. That provision contemplates that the insured cannot, absent Rockhill's consent or the death of the insured, transfer the entire policy, along with all of its rights and duties under it. Surely, someone who is deceased cannot enforce a right or fulfill a duty under a policy. Thus, read in context, the provision prohibits the insured from transferring the entire policy, along with its rights and duties under that policy without Rockhill's consent. But that is not what happened here.

Here, as part of the Sabrans' purchase of the property, Regal assigned "all right, title and interest in and to the Claim"—a post-loss assignment of a particular claim—to the Sabrans and authorized the Sabrans to receive payment from Rockhill for any "damage sustained to the Property from the Covered event." (Doc. 1-1 at 9 (emphasis added).) Specifically, the AOB assigned to the Sabrans:

> [A]ll [Regal's] right, title, and interest in and to the [insurance claim Regal made to Rockhill regarding damage caused to the insured property by Hurricane Irma], and all claims, demands, cause(s) of action of whatsoever kind and nature, as well as the rights to any and all benefits, proceeds or damages arising therefrom, that [Regal] has

12

> had, now has, or may have against [Rockhill] as it relates to [that claim], or any persons or entities, arising out of, or for, any loss, injury, or damage sustained to the [insured p]roperty . . . .

(Doc. 1-1 at 9, ¶ 2.)

A review of the AOB yields the conclusion that Regal did not transfer the policy to the Sabrans. Regal merely assigned the Hurricane Irma claim to the Sabrans. Regal remained the owner/insured under the policy and thus remained responsible to fulfill all duties under the policy. Thus, because Regal's post-loss AOB to the Sabrans was expressly confined to the Hurricane Irma claim here, it does not run afoul of the policy's prohibitions against unilateral assignment of the entire policy, along with Regal's "rights and duties under this policy." (Id.)

A review of other provisions of the policy supports the Court's conclusion. Specifically, a review of the plain language of the "Loss Payment" section of the policy supports the interpretation that the anti-transfer provision was not intended to bar assignments such as the AOB here but instead only prohibit the transfer of the entire policy.

The "Loss Payment" section states: "We will pay you unless some other person is named in the policy or is <u>legally entitled</u> to receive payment." (Doc. 1-1 at 26, § L (emphasis added).) Florida courts have interpreted similar policy provisions as contemplating payment to third-party assignees who would be "legally entitled" to post-loss benefits under the policy. See, e.g., <u>Bioscience W., Inc.</u>, 185 So. 3d at 641 ("A review of the 'loss-payment' provision provides support for our interpretation that the 'Assignment' provision of the insurance policy was not

13

intended to apply to assignments of benefits derived from the policy but instead to assignments of the entire policy." (citation omitted)). Thus, the Court does not agree that the policy's "anti-transfer language implicitly includes all the rights bestowed onto [Regal] as an insured under the [p]olicy, i.e., [Regal's] rights to potential policy benefits, rights to pursue a claim and assert any demands or causes of action under the [p]olicy." (Doc. 6 at 11.)

Finally, it is worth noting that the anti-assignment provision in <u>Raven</u> specifically excluded from coverage claims submitted pursuant to an assignment. 489 F. Supp. 3d at 1374. The relevant endorsement provided: "This insurance does not apply to any <u>claim</u> submitted by, or on behalf of, any person or entity <u>pursuant to an assignment</u> of benefits, rights, interest, proceeds or causes of action." <u>Id.</u> (emphasis added). Here, the language of the policy does not reference claims submitted pursuant to an assignment. (<u>See</u> Doc. 1-1.) Nor does it expressly exclude such claims from coverage. (<u>Id.</u>) So, <u>Raven</u> is inapposite to Rockhill's argument because even if it could bar a post-loss assignment of benefits without its consent, it did not do so here. Simply stated, Rockhill only prohibited assignment of the entire policy.

### III. Regal assigned an insurable interest, and the Sabrans can sue Rockhill as Regal's assignee.

Through the AOB, which did not require Rockhill's consent, Regal assigned the Sabrans an insurable interest. It is beyond challenge that Regal had an insurable interest in the property at the time of the alleged loss given its ownership of the property. Thus, whether the Sabrans can sue Rockhill turns on whether

14

Regal transferred its own right to sue Rockhill to the Sabrans. It does not turn, as Rockhill suggests, on whether the Sabrans had "an insurable interest in the insured property at the time of loss." (Doc. 6 at 12.)

"[A]n assignable right to benefits accrues on the date of the loss, even though payment is not yet due under the loss payment clause." One Call Prop. Servs. Inc., 165 So. 3d at 754. If an assignment is valid, the assignee "stands in [the] shoes" of the assignor and "has the same rights and status" that the assignor did. Pro. Consulting Servs., Inc. v. Hartford Life & Accident Ins. Co., 849 So. 2d 446, 447 (Fla. 2d DCA 2003) (citing Foster v. Foster, 703 So. 2d 1107, 1109 (Fla. 2d DCA 1997)). These principles of assignability are generally applicable to any contractual chose-in-action, and a claim for insurance benefits is no exception. One Call Prop. Servs. Inc., 165 So. 3d at 752–54. Again, the AOB assigned to the Sabrans "all [Regal's] right, title, and interest in and to" the insurance claim Regal made to Rockhill regarding damage caused to the insured property by Hurricane Irma. (Doc. 1-1 at 9, ¶ 2.) The AOB's unambiguous language demonstrates that Regal assigned its right to sue Rockhill for denial of post-loss insurance benefits to the Sabrans. Further, the assignable right to benefits accrued on the date of the loss, which, as discussed, preceded the assignment. And as noted, this assignment was valid even though Rockhill did not consent. Thus, the Sabrans can litigate their claim against Rockhill as Regal's assignee.

## CONCLUSION

Defendant Rockhill Insurance Company's Motion to Dismiss Plaintiffs' Complaint (Doc. 6) is **DENIED**.

**ORDERED** at Fort Myers, Florida, on September 7, 2021.

*/s/ John L. Badalamenti*
JOHN L. BADALAMENTI
UNITED STATES DISTRICT JUDGE

16